**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**Brenda Kay Johnson**                                                                **Plaintiff**

**v.**                            **CASE NO. 2:14CV00011 JTR**

**Carolyn W. Colvin, Acting Commissioner,
Social Security Administration**                                      **Defendant**

**ORDER AFFIRMING THE COMMISSIONER**

Brenda Kay Johnson seeks judicial review of the denial of her application for disability insurance benefits (DIB). Johnson last worked in 2007 as a teacher aide at a daycare facility.[1] Johnson applied for DIB on July 15, 2011, with an alleged onset date of October 31, 2007.[2] Johnson's date last insured (DLI) is December 31, 2012.[3] Johnson bases disability on high blood pressure, gall stones, pancreatitis, and issues with her thyroid, heart, vision, hearing, knees, back, left hand, right shoulder and arm.[4]

**The Commissioner's decision.** The Commissioner's ALJ determined that Johnson has not engaged in substantial gainful activity since the alleged onset date.[5]

---

[1] SSA record at pp. 37-39 & 154.

[2] *Id.* at p. 130.

[3] *Id.* at p. 160.

[4] *Id.* at p. 175.

[5] *Id.* at p. 14.

Johnson has severe impairments - osteoarthritis of the knees, mild degenerative joint disease and hypertension.[6] None of Johnson's severe impairments meet the listings, and Johnson can perform the full range of medium work.[7] The ALJ held that Johnson can perform past relevant work as a janitor, lacer and teacher aide.[8] Johnson's application was denied.[9]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[10] Johnson filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[11]

---

[6] *Id.*

[7] *Id.* at p. 15.

[8] *Id.* at p. 18.

[9] *Id.* at pp. 18-19.

[10] *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[11] *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Johnson's allegations.** Johnson maintains that (1) the ALJ's RFC determination is not supported by substantial evidence; and (2) the ALJ's credibility analysis is flawed.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[12] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the ALJ's denial of benefits.[13]

**RFC determination.** Johnson maintains that the ALJ's RFC determination is not supported by substantial evidence. The ALJ held that Johnson has the RFC to perform medium work.[14] Substantial evidence supports that determination.

With respect to Johnson's knee pain, the evidence suggests that it is controlled with conservative treatment. Over the course of the medical records, 2004-2013, Johnson was administered two steroid injections and prescribed meloxicam.[15] Although Johnson testified that she still takes meloxicam "as needed," the prescription

---

[12]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[13]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[14]SSA record at p. 15.

[15]*Id.* at pp. 401-402 & 445.

has not been refilled since 2011.[16] It seems Johnson's main source of treatment for her knee pain is over the counter pain relievers that she takes only two times a week.[17] Conservative treatment has consistently been found to support denials of disability.[18]

Every single radiological study of Johnson's knees contained in the medical records is normal. From 2010 to 2011, four radiological studies were performed.[19] A September 15, 2010, x-ray of Johnson's right knee revealed that the joint space was maintained and there was no fracture, dislocation or significant joint effusion.[20] An April 21, 2011, x-ray of both knees found normal joint spaces and mineralization, and intact patellae that were normally located and configured.[21] The study was negative.[22] An MRI of Johnson's right knee was performed on August 10, 2011, and was also negative.[23] The final x-ray of both knees was conducted in September of the same

---

[16]*Id.* at pp. 50-51 & 254.

[17]*Id.* at p. 51.

[18]*See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[19]SSA record at pp. 359, 365, 438 & 441.

[20]*Id.* at p. 359.

[21]*Id.* at p. 365.

[22]*Id.*

[23]*Id.* at p. 441.

year, and revealed no significant degenerative changes and no significant reduction of the joint spaces.[24] The radiological studies of Johnson's knees support the ALJ's RFC.

The record further establishes that Johnson sought only episodic care for her knee pain. Between May 2008 and September 2010, Johnson complained of knee pain only four times.[25] In 2011 and 2012, the records are void of any complaints of knee pain or treatments for osteoarthritis. This supports the denial of Johnson's application.[26]

The treatment records provide additional support for the RFC determination. Although some notes observed tenderness and swelling in Johnson's knees,[27] the majority of the notes establish that the effects of Johnson's pain are neither moderate nor severe. In a May 8, 2008, note, Johnson's treating physician observed that

---

[24]*Id.* at p. 438.

[25]*Id.* at pp. 307, 322, 325 & 346.

[26]*See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms).

[27]SSA record at pp. 322, 401 & 402.

Johnson exhibited a full range of motion and her knees were not swollen or tender.[28] A September 14, 2010, note indicates that there was no swelling or redness, no flexion deformity, no crepitations, Johnson exhibited a full range of motion, and the leg examinations were unremarkable.[29] Further, the McMurray[30] and drawer[31] tests were both negative.[32] In March 2011, Johnson's treating physician noted that although Johnson complained of right knee pain, the knee was not swollen or tender.[33] Approximately a month later, it was noted that Johnson had no varus[34] or valgus[35]

---

[28]*Id.* at p. 325.

[29]*Id.* at p. 307.

[30]The McMurray test is a "rotation of the tibia on the femur to determine injury to meniscal structures." Stedman's Medical Dictionary, 27th Edition 2000, 403610

[31]The drawer test, or drawer sign, is conducted during a knee examination and is "the forward or backward sliding of the tibia under applied stress, which indicate laxity or tear of the anterior (forward slide) or posterior (backward slide) cruciate ligaments of the knee." Stedman's Medical Dictionary, 27th Ed. 2000, 373770.

[32]SSA record at p. 307.

[33]*Id.* at p. 321.

[34]Varus is defined as "bent or twisted inward toward the midline of the limb or body." Stedman's Med. Dictionary 431950 (27th ed.).

[35]Valgus is defined as "bent or twisted outward from the midline or body." Stedman's Med. Dictionary 430800 (27th ed.).

instability; exhibited negative ballottement,[36] anterior drawer, posterior drawer, and quadriceps active tests; there was only mild crepitus;[37] and no joint effusion.[38, 39]

Throughout the medical records, Johnson also complained of right shoulder pain.[40] The records, however, establish that treatment for her shoulder was conservative. As established above, Johnson was prescribed meloxicam,[41] but that prescription has not been refilled since 2011.[42] Johnson testified that she takes over the counter pain relievers approximately two times a week.[43]

As with Johnson's knees, the radiological reports relating to her shoulder reveal nothing abnormal. A September 15, 2010, x-ray identified no fracture or dislocation,

---

[36] Ballottement is "a diagnostic maneuver for detecting the presence of a floating mass in the body cavity." 1-B Attorneys' Dictionary of Med. B-13892.

[37] Crepitus, or crepitation, is the "noise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions." Stedman's Med. Dictionary 94460 (27th ed.).

[38] Joint effusion is "increased fluid in synovial cavity of a joint." Stedman's Med. Dictionary 125240 (27th ed.).

[39] SSA record at p. 402.

[40] *Id.* at pp. 302, 307, 326, 430, 466 & 484.

[41] *Id.* at p. 303.

[42] *Id.* at p. 254.

[43] *Id.* at p. 51.

and found that the acromioclavicular distance was maintained.[44]

Further, Johnson only sought episodic treatment for her shoulder. The first complaint came in 2006.[45] Johnson did not complain of shoulder pain again until 2010.[46] Johnson next sought treatment nearly two years later in 2012.[47] This weighs against Johnson's allegations of disabling shoulder pain.

The evidence establishes that Johnson's hypertension is also controlled with conservative treatment. Johnson has been prescribed the same two medications, lisinopril and bisoprolol, since 2008.[48] She still takes both medications today.[49] Additionally, the record contains no evidence of serious or even moderate side effects stemming from Johnson's hypertension.

The opinion evidence provides additional support for the RFC determination. In November 2010, a state physician examined Johnson and found that Johnson had a normal range of motion in her knees and shoulders.[50] Johnson exhibited negative

---

[44]*Id.* at p. 361.

[45]*Id.* at p. 326.

[46]*Id.* at p. 307.

[47]*Id.* at p. 466.

[48]*Id.* at pp. 249-255.

[49]*Id.* at p. 49.

[50]*Id.* at p. 315.

straight leg raising in her right and left legs.[51] Her reflexes were normal, no edema was observed, and Johnson could stand/walk without assistive devices.[52] As Johnson points out, this physician opined that Johnson is limited in her ability to stand and walk because of her right knee.[53] The ALJ recognized this, but gave the physician's testimony only some weight because the radiological reports, and the physician's own findings during the examination, do not support the stand/walk limitation.[54]

The record also contains opinions from two additional state physicians. In January 2012, a state physician reviewed the medical evidence and determined that it supports a finding of "not severe" due to the lack of a significant medically determinable impairment.[55] This conclusion was affirmed by a separate state physician in February 2012.[56]

Johnson's reported daily activities also support the RFC. In the Function Report, Johnson maintains that she cooks meals, walks to the post office, makes her

---

[51]*Id.* at p. 316.

[52]*Id.* at pp. 316-317.

[53]*Id.* at p. 317.

[54]*Id.* at p. 17.

[55]*Id.* at p. 452.

[56]*Id.* at p. 459.

bed and does laundry.[57] She is able to go out alone, and either walks or rides in a car.[58] Once a month, for one or two hours, Johnson shops for groceries, toiletries, cleaning items and clothes.[59] She goes to church and visits her mother on a regular basis.[60] During the hearing Johnson testified that she is able to pick up and carry forty pounds in her home, and can push and pull a recliner for repositioning.[61,62]

A reasonable mind would accept the evidence as adequate to support the ALJ's RFC. The RFC is supported by substantial evidence.

**Credibility.** Johnson further asserts that the ALJ erred in the credibility determination because (1) the ALJ did not give examples of Johnson's daily activities referenced in the decision; and (2) the ALJ mistakenly relied on the fact that no physician indicated Johnson was disabled.

After reviewing the medical record, the ALJ determined that Johnson was not

---

[57]*Id.* at pp. 194 & 196.

[58]*Id.* at p. 197.

[59]*Id.*

[60]*Id.* at p. 198.

[61]*Id.* at pp. 55-56.

[62]The testimony gets confusing following Johnson's statement that she can lift forty pounds, and she seems to distance herself from this statement after further questioning from her attorney. The fact remains, however, that she does state she can lift forty pounds and carry that amount of weight from room to room in her home.

credible to the extent that her statements were inconsistent with the residual functional capacity assessment.[63] For support the ALJ gave the following reasons: (1) Johnson described daily activities which were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations; (2) although Johnson received treatment for the allegedly disabling impairments, that treatment was essentially routine and/or conservative in nature; and (3) the record does not contain any opinions from treating or examining physicians indicating that the claimant is currently disabled.[64]

Johnson asserts that the ALJ erred in failing to give examples of the daily activities that were not as limited as expected. This argument, however, is not persuasive because the ALJ is not required to give examples. As Johnson points out, when making a credibility determination, the ALJ must give reasons for discrediting a claimant's testimony, set forth the inconsistencies and discuss the *Polaski* factors.[65,][66] The ALJ did all of these things. As established above, he specifically set out his reasons for discrediting Johnson. He also addressed inconsistencies between

---

[63]SSA record at p. 16.

[64]*Id.* at p. 18.

[65]*Beckley v. Apfel*, 152 F.3d 1056, 1060 (8th Cir. 1998).

[66]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Johnson's allegations of disabling pain and the medical records, and discussed the *Polaski* factors.[67] No more is required.

Johnson maintains that the absence of an opinion from a treating physician finding her disabled does not constitute substantial evidence supporting the credibility determination. Johnson is correct. The fact that a treating physician has not opined as to whether Johnson is disabled is not *alone* enough to support the ALJ's credibility determination.[68] The ALJ, however, did not rely on this fact alone. In making his credibility determination he reviewed the medical treatment notes, prescribed treatments, radiological testing, reported daily activities and physician opinions. No error was committed.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the court DENIES Johnson's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 6th day of October, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

---

[67]SSA record at pp. 15-18.

[68]*Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).